ZIMMERMAN REED LLP
Christopher P. Ridout (SBN 143931)
 E-mail: christopher.ridout@zimmreed.com
Caleb Marker (SBN 269721)
 E-mail: caleb.marker@zimmreed.com
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

ZIMMERMAN REED LLP
J. Gordon Rudd, Jr. (*pro hac vice* anticipated)
 E-mail: gordon.rudd@zimmreed.com
David M. Cialkowski (*pro hac vice* anticipated)
 E-mail: david.cialkowski@zimmreed.com
Alia M. Abdi (*pro hac vice* anticipated)
 E-mail: alia.abdi@zimmreed.com
80 S 8th Street, Suite 1100
Minneapolis, MN 55402
(612) 341-0400 Telephone
(612) 341-0844 Facsimile

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shakonda Harts, Denisse Arambula, Ashia Lynn, Rosa Young, and Deanna Malara, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Deva Concepts, LLC,<br><br>Defendant | Case No.: 2:20-cv-2048<br><br>**CLASS ACTION COMPLAINT**<br><br><br>(Plaintiffs Demand Trial by Jury) |

Plaintiffs Shakonda Harts, Denisse Arambula, Ashia Lynn, Rosa Young, and Deanna Malara ("Plaintiffs") individually and on behalf of all other similarly situated, bring this action against Defendant Deva Concepts, LLC (herein "Defendant"). Plaintiffs allege the following based on information and belief, the investigation of counsel, and personal knowledge.

## INTRODUCTION

1.    This class action challenges the deceptive, misleading, unfair, and unlawful conduct of Defendant in connection with its active concealment of and failure to disclose the harmful side effects caused by DevaCurl hair care products which are designed, formulated, produced, marketed, and sold by Defendant. Defendant's products include the DevaCurl No-Poo Original, DevaCurl Low-Poo Original, DevaCurl Low-Poo Delight, DevaCurl No-Poo Decadence, DevaCurl One Condition Original, DevaCurl Light Defining Gel, DevaCurl Ultra Defining Gel, DevaCurl One Condition Delight, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence, Super Stretch Coconut Curl Elongator, and Wavemaker (collectively the "Products").

2.    Defendant sold and marketed these Products to consumers with curly, super curly, and wavy hair. Defendant advertises the Products as safe, natural and free from harsh ingredients and designed to moisturize, nourish and strengthen hair. However, complaints concerning product safety and efficacy have been common and hard to ignore. Rather than strengthening hair and moisturizing the curls, DevaCurl Products have caused consumers to suffer hair loss, hair damage, balding, and scalp injury.

3.    Defendant failed to warn consumers that normal use of its Products can cause hair loss, hair damage, balding, and scalp injury. Instead of disclosing the risk of hair loss, hair damage, balding, scalp injury and other damage associated with its Products, Defendant conceals these risks and shifts the blame to "a number of reasons including giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses,

COMPLAINT

and more."[1] Defendant goes a step further and normalizes excessive hair loss by stating that "it is normal to lose up to 100 hairs per day."[2]

4.    Even when faced with a multitude of consumers complaining about adverse side effects with normal use of its Products, Defendant continued to market its products as safe and containing only "natural and functional ingredients."[3]

5.    Relying on these omissions and misrepresentations, Plaintiffs purchased the DevaCurl Products. After exclusively using DevaCurl products, Plaintiffs began experiencing hair loss, hair damage, balding, excessive shedding, scalp injury, or a combination of these harms.

6.    Defendant's active concealment and material omissions induced the purchase of DevaCurl hair care products because no reasonable consumer would have likely purchased the Products, let alone paid a premium for them, had they known it could result in such harm. Every consumer who purchased Defendant's defective Products without the facts concerning the risks and side effects having been disclosed prior to purchase were injured equally at the point of sale when, instead of obtaining premium safe, and natural hair care products they thought they were getting, they obtained Defendant's dangerous and defective product. Had the potential impacts of the defective hair care products designed and sold by Defendant been disclosed to reasonable consumers, they would have not paid the hefty premium charged for these products, or more likely, would not have purchased them at all.

7.    Now, Plaintiffs bring the instant action on behalf of themselves and all others similarly situated, seeking damages incurred for Defendant's deceptive conduct.

---

[1] *See*, https://www.devacurl.com/blog/hair-shedding-101/ (last visited Feb. 12, 2020).
[2] *Id.*
[3] https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary (last visited Feb. 27, 2020).

**PARTIES**

8.     Plaintiff Shakonda Harts is a resident of Inglewood, California who purchased and exclusively used DevaCurl products. Plaintiff Harts experienced hair loss, balding, and scalp injury after using DevaCurl products.

9.     Plaintiff Denisse Arambula is a resident of Richmond, California who purchased and exclusively used DevaCurl Products. Plaintiff Arambula experienced scalp irritation, scalp redness, and dandruff after using DevaCurl products.

10.     Plaintiff Ashia Lynn is a resident of Fort Walton Beach, Florida who purchased and exclusively used DevaCurl Products. Plaintiff Lynn experienced severe hair loss and scalp injury after using DevaCurl products.

11.     Plaintiff Rosa Young is a resident of Crystal Springs, Mississippi who purchased and exclusively used DevaCurl Products. Plaintiff Young experienced severe hair loss and scalp injury after using DevaCurl products.

12.     Plaintiff Deanna Malara is a resident of Bradenton, Florida who purchased and exclusively used DevaCurl Products. Plaintiff Malara hair experienced loss, hair thinning, and excessive shedding after using DevaCurl products.

13.     Defendant Deva Concepts, LLC is incorporated in Delaware with its principal place of business at 560 Broadway, Suite 206, New York, NY 10012.

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court also has jurisdiction over this action pursuant to Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (d)(2), because at least one class member is of diverse citizenship from Defendant; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

COMPLAINT

16.     This Court has personal jurisdiction over Defendant because it transacts business in this District, has substantial aggregate contacts within this District, and it purposefully availed itself of the laws of this District.

17.     Venue is proper in this District pursuant 28 U.S.C §1391 because Defendant does business throughout this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this District, and at least one Plaintiff resides in this District. This Court accordingly has jurisdiction over this action and venue proper is this District.

## FACTUAL ALLEGATIONS

**DevaCurl Products**

18.     Defendant's DevaCurl products are formulated for consumers with curly, super curly, and wavy hair. The DevaCurl hair care brand offers a range of products such as: cleansers, conditioners, treatments, stylers, and hair tools.[4]

19.     In 2002, Defendant created and developed the "DevaCurl No-Poo Original" which is marketed as the "game-changing alternative to traditional shampoo." *See* https://www.devacurl.com/us/curl-101/our-story (last visited Feb. 9, 2020).

20.     Defendant's DevaCurl No-Poo Original is a "no-suds conditioning cleanser" that is a marketed as a gentle product to cleanse curls without stripping away the natural oils needed to keep the curls looking "healthy, bouncy, and simply gorgeous." *Id*.

21.     Since creating the DevaCurl No-Poo Original, Defendant has expanded its "moisturizing cleanser" line by adding the DevaCurl Low-Poo Original, Low-Poo Delight, and No-Poo Decadence (collectively referred to as the "conditioning cleansers").[5]

---

[4] In addition to hair care products, Defendant offers classes for those interested in specializing in curly hair care and becoming an expert in the company's products. The classes are offered at the DevaCurl Academy, online, and in the field by way of their one-day classes taught across the United States, including California.

[5] *See*, https://www.devacurl.com/us/products (last visited Feb. 12, 2020).

22.    Defendant's conditioning cleansers individually cost $46.[6] However, they are regularly sold as part of a "kit" in conjunction with other DevaCurl products as part of an overall hair system. Defendant prices the kits at $92. *Id.*

23.    Consumers pay premium prices for Defendant's conditioning cleansers along with their products based on Defendant's representations. For example, Defendant states that its products "will not only enhance your curls, but also enhance your life."[7]

24.    Defendant also states that the DevaCurl products are "rooted in curl science" and are "formulated with a moisture foundation that helps curls look and feel healthy, conditioned, soft, defined, shiny, and frizz-free."[8]

25.    Defendant assures consumers that their products are safe. According to Defendant, DevaCurl products go through "extensive product testing." The testing consists of products undergoing Defendant's "strict safety testing protocols" which includes testing "products on actual people, not mannequins or hair swatches."[9]

26.    Defendant regularly advertises all of its products as "free of harsh ingredients long before it was buzzworthy" because "it was the right thing to do for curls."[10] For example, Defendant promotes its products as containing only "natural and functional ingredients." Defendant claims that its products contain ingredients with a conscience and are "100% sulfate, silicone, paraben, phthalate, mineral oil, gluten and cruelty free."[11] Defendant bolsters these claims with photographs of natural ingredients such as chia-flaxseed extract, jojoba oil, saffron flower extract, and passionfruit oil.[12]

27.    However, the full list of ingredients in a bottle of DevaCurl No-Poo Original conditioning cleaner is not as simple as the advertising suggests, and includes:

---

[6]*See*, https://www.devacurl.com/us/products/cleansers/low-poo-original/v/29778540822610 (last visited Feb. 17, 2020).

[7]*See*, https://www.devacurl.com/us/curl-101/product-philosophy (last visited Feb. 27, 2020).

[8]*Id.*

[9] *Id.*

[10]*See*, https://www.devacurl.com/us/curl-101/product-philosophy (last visited Feb. 8, 2020).

[11]*Id.*

[12] https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary (last visited Feb. 27, 2020).

Water (Aqua, Eau), Cetyl Alcohol, Glycerin, Isopropyl Palmitate, Behentrimonium Chloride, Laureth-4, Propylene Glycol, Vitis Vinifera (Grape) Seed Oil, Mentha Piperita (Peppermint) Oil, Wheat Amino Acids, Melissa Officinalis Extract, Humulus Lupulus (Hops) Extract, Cymbopogon Schoenanthus Extract, Chamomilla Recutita (Matricaria) Flower Extract, Rosmarinus Officinalis (Rosemary) Leaf Extract, Achillea Millefolium Extract, Cocamidopropyl Betaine, Menthol, Citric Acid, Polyquaternium-7, Phenoxyethanol, Ethylhexylglycerin, Fragrance (Parfum).

*See*, https://www.devacurl.com/us/products/cleansers/no-poo-original/v/ 29767841742930 (last visited Feb. 13, 2020).

28.    Several of these ingredients are known allergens, irritants, or otherwise harmful to humans including Propylene Glycol and Cocamidopropyl Betaine. For example, in 2004, the American Dermatitis Society named Cocamidopropyl Betaine the allergen of the year.[13]  In 2018, Propylene Glycol was named allergen of the year by the American Dermatitis Society. [14]

29.    Defendant not only failed to disclose the allergens contained in its "natural" products, but also failed to disclose the safety risks associated with ordinary use of its products. Specifically, the packaging and advertising of Defendant's DevaCurl products fails to warn consumers of the risk of hair loss, hair damage, excessive shedding, balding, and scalp injury.

30.    Defendant engaged in the above-described actionable statements, omissions, and concealments and knew or should have known that the representations were false and/or misleading and likely to mislead reasonable consumers. Defendant had and has exclusive access to information pertaining to the defects in its hair care products that Plaintiffs and Class members could not and did not have.

**Consumer Complaints of DevaCurl Products**

31.    The effects of Defendant's DevaCurl defective hair care products are far from strengthening hair and reducing breakage.

---

[13] *See*, https://www.ncbi.nlm.nih.gov/pubmed/18627690 (last visited Feb. 17, 2020).
[14] *See*, https://www.ncbi.nlm.nih.gov/pubmed/29059092 (last visited Feb. 17, 2020).

32.    For example, on August 8, 2019, a consumer stated on the Better Business Bureau website, "I have been using Deva curl products for off and on 2 years…. My scalp has been increasingly itchy, hair shedding abnormally, thinning ends." Aside from the money spent on DevaCurl products, the consumer says the biggest concern is "the disaster these products have caused [her] scalp and hair." *See*, https://www.bbb.org/us/ny/new-york/profile/hair-salon/devachan-0121-100132/complaints#344066087 (last visited Feb. 9, 2020).

33.    On November 8, 2019, a consumer reported on Trustpilot.com that she was experiencing "horrible itchy scalp and major hair loss after using these products for over three years. My Deva Curl hairdresser is fantastic but these products are absolutely horrible! Just think I gave these to my young daughter for her curls, she also experienced major hair loss and itchy scalp. Deva Curl, I hope you acknowledge my email and refund me asap for this disaster!" *See*, https://www.trustpilot.com/review/devacurl.com (last visited Feb. 9, 2020).

34.    Numerous customers have posted product reviews on Sephora reporting thinning hair, hair loss, itchy scalp, and dandruff. For example, one consumer wrote, "I started noticing my hair thinning, which was distributing because I have always had extremely thick hair. Finally, I couldn't ignore it anymore this year when I could see through to my scalp, and I looked balding when my hair was wet." See, https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/page/2 (last visited Feb. 9, 2020).

35.    In December 2019, a group of consumers formed a Facebook group called "Hair Damage & Hair Loss from DevaCurl- You're not Crazy or Alone!" The thousands of members have shared their hair loss, excessive shedding, hair damage, hair balding, and scalp irritation after using DevaCurl hair care products. The group currently has over 42,000 members as of filing this Complaint.

36.    DevaCurl ambassador, Ayesha Malik, a social media influencer once hired by DevaCurl, posted a video on her YouTube channel titled "Why I Stopped Using

DevaCurl" on January 31, 2020. *See* https://www.youtube.com/watch?v=nuo8UCcyDhg (last visited Feb. 14, 2020). In 2018, Malik says she started to notice a change in her hair. After following the same hair care routine for six years—consisting of exclusive use of DevaCurl products and tools—Malik says she went an entire year of "bad hair days." Her bad hair days included: itchy scalp, dandruff, severe hair damage, and hair loss. Malik says, "I don't know what else to do except for literally shave my whole head."   After recommending viewers to stop using these products, she says, "These products are really expensive so when you pay the money for them, you expect high quality and that's why I feel like I've been lied to."

37.   YouTube is replete with video journals like Malik's. *See, e.g.*, Stephanie Mero aka "The Curl Ninja," Dec. 24, 2019 (https://www.youtube.com/watch?v=YIeCytk_CUg) (after suffering from hair loss and damage with DevaCurl use Mero shares "how [she] went from being a DevaCurl stylist to a victim"); Sydney Dragon, Feb. 1, 2020 (https://www.youtube.com/watch?v=D9kFPy2qMMc) (she describes experiencing an itchy scalp, hair damage, and dandruff); Kamrin White, Feb. 8, 2020 (https://www.youtube.com/watch?v=gVIH-TIDPHc) ("DevaCurl ruined my hair and almost cost me my job") (last visited Feb. 13, 2020); Karen Mcllarth, Feb. 9, 2020 (https://www.youtube.com/watch?v=fjgwY0RQqfU) ("my hair was just really dry…and I was losing a lot of hair").

38.   Despite ample notice and knowledge of the problems caused by DevaCurl products, Defendant has not recalled any of the products, has not provided any warnings of the known risks, and has not offered consumers any compensation for their damages.

39.   Had Plaintiffs and the Class been aware of this information prior to purchasing the defective hair care products, they would not have purchased them. At a minimum, Plaintiffs and the Class would have been able to make informed purchasing decisions had they known the true risk of injury and hair loss inherent in Defendant's DevaCurl hair care products.

## ALLEGATIONS PERTAINING TO PLAINTIFFS

40.    Plaintiff Shakonda Harts ("Harts") began purchasing Defendant's DevaCurl products in July of 2013 at Ulta Beauty. Plaintiff Harts purchased the DevaCurl products based on the representations on the packaging and labeling of the product, as well as Defendant's online marketing statements.

41.    After reviewing online tutorials created by Defendant's ambassadors, Plaintiff Harts began using DevaCurl One Condition Original. Defendant Harts exclusively used Defendant's DevaCurl One Condition and experienced hair loss, hair damage and scalp irritation.

42.    Plaintiff Harts' hair loss was so severe that she developed a bald patch at the very front of her head. Unable to hide the bald patch on her head, Plaintiff Harts was forced to wear wigs until her hair grew back. Plaintiff Harts discontinued using Defendant's DevaCurl products.

43.    Plaintiff Denisse Arambula ("Arambula") began purchasing Defendant's DevaCurl products in 2017 at Ulta Beauty and Sally Beauty suppliers. Plaintiff Arambula purchased the DevaCurl products based on the representations on the packaging and labeling of the product, as well as Defendant's online marketing statements.

44.    After reviewing online tutorials created by Defendant's ambassadors, Plaintiff Arambula began using DevaCurl No-Poo, DevaCurl One Condition Original, Light Defining Gel, and the Super Cream Styling Cream.

45.    Plaintiff Arambula exclusively used Defendant's DevaCurl products and experienced scalp irritation, redness, and dandruff. Plaintiff Arambula discontinued using Defendant's DevaCurl products.

46.    Plaintiff Ashia Lynn ("Lynn") began purchasing Defendant's DevaCurl products in 2017 at Ulta Beauty and on Amazon. Plaintiff Lynn purchased the DevaCurl products based on the representations on the packaging and labeling of the product, as well as Defendant's online marketing statements.

47.     After reviewing online tutorials created by Defendant's ambassadors, Plaintiff Lynn began using DevaCurl No-Poo Original, DevaCurl One Condition Original, and DevaCurl Light Defining Gel.

48.     Plaintiff Lynn exclusively used Defendant's DevaCurl products and experienced severe hair loss and scalp irritation. Plaintiff Lynn reported her hair loss and scalp injury to Defendant and discontinued using DevaCurl products.

49.     Plaintiff Rosa Young ("Young") began purchasing Defendant's DevaCurl products in 2008 at Ulta Beauty, Sephora, Target, and Wal-Mart. Plaintiff Young purchased the DevaCurl products based on the representations on the packaging and labeling of the product, as well as Defendant's online marketing statements.

50.     After learning how to use the products at Defendant's Deva Salon in New York, Plaintiff Young began using DevaCurl No- Poo Original, DevaCurl No-Poo Decadence, DevaCurl One Condition Original, Heaven in Hair, Deep Sea Repair, Arc AnGEL, and the Melt into Moisture.

51.     Plaintiff Young exclusively used Defendant's DevaCurl products and experienced severe hair loss, excessive shedding, and scalp irritation. Plaintiff Young contacted Defendant and reported experiencing hair loss, excessive shedding, and scalp injury. Plaintiff Young was told that her hair loss and shedding was normal because individuals with curly can lose up to 100 pieces of hair a day. Plaintiff Young discontinued using DevaCurl products.

52.     Plaintiff Deanna Malara ("Malara"), a hair stylist, began purchasing Defendant's DevaCurl products in 2016 at Salon Centric. Plaintiff Malara purchased Defendant's DevaCurl products based on the representations on the packaging and labeling of the product, as well as Defendant's online marketing statements.

53.     Plaintiff Malara began using DevaCurl Low-Poo, DevaCurl One Condition Original and Arc AnGEL. After exclusively using DevaCurl products, Plaintiff Malara experienced hair thinning and excessive shedding. Plaintiff Malara suffered severe hair

thinning at the crown of her head. In 2018, Plaintiff Malara discontinued using DevaCurl products.

## CLASS ACTION ALLEGATIONS

54.    Pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and as the "Class" defined as:

> All persons who, within the Class Period, purchased one or more hair care products sold by Defendant in the United States. The "Class Period" for the Class dates back to the length of the longest applicable statute of limitations for any claims asserted on behalf of that Class from the date this action was commenced and continues through the present and the date of judgment.

55.    Plaintiffs reserve the right to amend the definition of the Class and Class Period if discovery or further investigation reveals that the Class should be expanded or otherwise modified. All requirements for class certification in Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied with respect to the Class. Class certification under Fed. R. Civ. P. 23(b)(1) or 23(b)(2) is also proper.

56.    **Numerosity**: Plaintiffs do not know the exact size or identities of the proposed Class, however, the Class encompasses millions of individuals who are dispersed geographically throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

57.    **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class. All Plaintiffs suffered damage as a result of the defective hair care products and individual questions are minimal. The common questions of law and fact include, but are not limited to:

    a.    Whether Defendant's hair care products were defective;

    b.    Whether Defendant's hair care products have the propensity to cause injury when used as directed;

    c.    Whether Defendant had knowledge or should have known of the defect in its hair care products;

COMPLAINT

d.    Whether Defendant concealed the defect in its hair care products;

e.    Whether the defect was a material fact which Defendant had a duty to disclose to Plaintiffs and the Class;

f.    Whether Plaintiffs and the Class suffered damage from Defendant's defective hair care products;

g.    Whether Defendant breached the implied warranty of merchantability or other warranties related to its defective hair care products;

h.    Whether Plaintiffs and the Class are entitled to damages, restitution, restitutionary disgorgement, equitable relief, or other relief; and

i.    The amount and nature of such relief to be awarded to Plaintiffs and the Class.

58.    **Typicality**: Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs and the members of the Class purchased Defendant's defective hair care products with the same expectation that the products were defect-free and safe to use for their intended purpose. Plaintiffs and members of the Class have all sustained injury in that they lost the benefit of their bargain and at the very least overpaid for a product that contains the defects described above.

59.    **Adequacy:** Plaintiffs and the undersigned counsel will fairly and adequately protect the interests of members of the Class. Plaintiffs have no interests that are adverse to the interests of the other members of the Class and have hired counsel experienced in class actions, complex litigation, and trial practice.

60.    **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the Class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost and burden on the court system of adjudication of individualized litigation would be substantial, and significantly more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

61.   **Predominance/Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact predominate with respect to the liability issues, relief issues, and anticipated affirmative defenses. The named Plaintiffs have claims typical of the Class. Without limitation, as a result of Defendant's conduct alleged herein, Plaintiffs were: (a) injured; and (b) sustained pecuniary loss in an ascertainable amount to be proven at the time of trial.

## COUNT I

## VIOLATION OF THE CALIFONRIA UNFAIR COMPETITION LAW ("UCL"), BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*

62.   Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

63.   Business & Professions Code § 17200, *et seq.* prohibits acts of "unfair competition," which is defined by Business & Professions Code § 17200 as including any "unlawful, unfair, or fraudulent business act or practice…."

64.   Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing from Plaintiffs and Class members the material facts that DevaCurl products can cause hair loss, hair damage, balding and scalp injury.  Defendant should have disclosed this information because they were in a superior position to know, and, as

COMPLAINT

the manufacturer who claims to have tested these products, should have known, the true facts related to this defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the defect prior to their purchases.

65.    Defendant acts and practices have deceived Plaintiffs and are likely to deceive reasonable consumers targeted by Defendant's statements and omissions. In failing to disclose this material defect and suppressing other material facts from Plaintiffs and Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members. The omissions and acts of concealment by Defendant pertained to information material to Plaintiffs and Class members in that it would have been likely to deceive them based on reasonable consumer's expectations and assumptions.

66.    The injuries suffered by Plaintiffs and Class members are also greatly outweighed by any potential countervailing benefit to consumers or to competition. Nor are they injuries that Plaintiffs and Class members should or could have reasonably avoided.

67.    Plaintiffs seek to enjoin further unlawful, unfair and fraudulent acts or practices by Defendant, to obtain restitution disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under Cal. Bus. & Prof. Code. § 17200.

## COUNT II

## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.

68.    Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

69.    In violation of California Business & Professions Code § 17500, et seq., Defendant has disseminated or caused deceptive advertising misrepresentations, omissions and practice, including the statements referenced, *inter alia*, in paragraphs 11-

15, *supra*. These statements are actionable violations of § 17500 in that Defendant expressly state that DevaCurl products have attributes which they do not possess.

70.     Defendant's advertising misrepresentations, omissions, and practices made in connection with the sale of DevaCurl products are unfair, deceptive or misleading within the meaning of California Business & Professions Code § 17500, et seq. Defendant's conduct was likely to deceive reasonable consumers.

71.     Pursuant to California Business & Professions Code § 17535, Plaintiffs and members of the Class seek, and are entitled to:

    a.     an order enjoining Defendant from continuing to make false and misleading statements concerning DevaCurl products;

    b.     restitution and disgorgement of any and all excessive amounts paid to Defendant or its agents;

    c.     equitable relief pursuant to Cal. Code of Civil Procedure § 384;

    d.     pre-and post-judgment interest at the highest rate allowable by law; and

    e.     payment of attorneys' fees and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5, the common fund and private attorney general doctrine.

72.     As a result of Defendant's numerous violations of the false advertising statute, Plaintiffs and Class members are entitled to equitable relief as the Court deems appropriate.

## COUNT III

## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

## Cal. Civ. Code §§ 1750, *et seq.*

73.     Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

74.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect

consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal ,family, or household use.

75.    Defendant is a "person" as defined by Cal. Civ. Code §§ 1761 (c) & 1770 and has provided "services" as defined by Cal. Civ. Code §§ 17761 (b) & 1770.

76.    Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code §§ 1761(d) & 1770 and have engaged in a "transaction" as defined by Cal. Civ. Code §§ 1761(e) & 1770.

77.    Defendant's unlawful conduct resulted in the sales of products and services to Plaintiffs and the Class in violation of Cal. Civ. Code § 1770, including:

    a. Representing that goods or services have characteristics that they do not have;

    b. Representing that goods or services are of a particular standard, quality, or grade when they were not;

    c. Advertising goods or services with intent not to sell them as advertised; and

    d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

78.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

79.    Had Defendant disclosed to Plaintiffs and the Class that they were misrepresented Defendant's products, omitted material information regarding the risk involved with use of the products and true abilities of those Defendant's products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective products. Instead, Defendant represented that its products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfate, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and

the Class acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

80.     As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiffs and the Class have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's products, and increased time and expense in treating the damage caused by the use of Defendant's product.

81.     Defendant's actions warrant appropriate injunctive relief.

82.     Plaintiffs, individually and on behalf of the Class seek injunctive relief, and such other relief as the Court deems just and proper.

## COUNT IV

## Breach of Implied Warranty

83.     Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

84.     At all times relevant herein, Defendant was a merchant with respect to the defective hair care products as described in this Complaint. The defective hair care products sold to Plaintiffs and members of the Class are goods as defined by relevant statutes.

85.     Defendant's hair care products include an implied warranty that they are merchantable in that they are, *inter alia*, fit for the ordinary purpose for which such goods are used.

86.     The defective hair care products at issue in this case are not in merchantable condition or fit for the ordinary purpose for which such goods are used in that rather than cleaning and conditioning hair and styling hair, they cause skin irritation, injury, and hair loss, among other damage.

87.     At all times relevant herein, Defendant was aware of the defect in the defective hair care products. Specifically, Defendant and its agents were on notice of the

18

problems and provided an opportunity to cure the defect due to the plethora of complaints received.

88.    Plaintiffs and members of the Class were in direct privity with Defendant and its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

89.    Plaintiffs and the Class were harmed by Defendant's omissions and misrepresentations when they purchased the defective hair care products.

90.    Had Defendant disclosed the true nature of the defect in its hair care products, Plaintiffs and members of the Class would not have purchased DevaCurl hair care products.

91.    Plaintiffs and members of the Class have suffered a loss by paying more than they would have otherwise paid for the defective hair care products and by receiving hair care products of inferior value than what they were promised by Defendant.

92.    As a direct and proximate result of Defendant's breaches, Plaintiffs and members of the Class have suffered, and will continue to suffer, significant damages, loss, and injury in an amount to be determined at trial.

93.    Plaintiffs and members of the Class are entitled to legal and equitable relief against Defendant, including actual and consequential damages, attorneys' fees, costs of suit, and other relief as deemed appropriate.

## COUNT V

## Breach of Express Warranty

94.     Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

95.    As described herein, Defendant placed labels on its defective hair care products, and on its website, with the intention that consumers would rely on those misrepresentations and purchase the product from Defendant.

96.    At all times relevant herein, Defendant were aware, or with the exercise of reasonable care should have been aware, of the defect in the defective hair care products.

Specifically, Defendant and its agents were on notice of the problems and were provided an opportunity to cure due to the plethora of complaints received.

97.   Defendant's false and misleading statements related to quality and safety became a basis of the bargain, and Plaintiffs and members of the Class expected that the DevaCurl hair care products that they purchased would conform to Defendant's affirmations.

98.   Plaintiffs and members of the Class were in direct privity with Defendant and its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

99.   Plaintiffs and the Class were harmed by Defendant's omissions and misrepresentations when they purchased the defective hair care products.

100.   Had Defendant disclosed the true nature of the defect in its hair care products, Plaintiffs and members of the Class would not have purchased the defective hair care products.

101.   Plaintiffs and members of the Class have suffered a loss by paying more than they would have otherwise paid for the defective hair care products and by receiving hair care products of inferior value than what they were promised by Defendant.

102.   As a direct and proximate result of Defendant's breaches, Plaintiffs and members of the Class have suffered, and will continue to suffer, significant damages, loss, and injury in an amount to be determined at trial.

103.   Plaintiffs and members of the Class are entitled to legal and equitable relief against Defendant, including actual and consequential damages, attorneys' fees, costs of suit, and other relief as deemed appropriate.

**COUNT VI**

**Unjust Enrichment**

104.   Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

105.    Plaintiffs bring this claim on behalf of the Class as an alternative to the claim for breach of warranty (Counts V).

106.    As alleged above, Defendant's unlawful, unfair, deceptive, and wrongful acts and omissions, unjustly enriched Defendant at the expense of Plaintiffs and the Class. Plaintiffs and the Class paid a premium for hair care products which were unfit for their ordinary use and were of inferior quality.

107.    Plaintiffs and Class members conferred a benefit on Defendant through payment for the defective hair care products.

108.    Defendant's retention of the benefit conferred as a result of its unlawful acts is inequitable and unjust.

109.    Plaintiffs and members of the Class have no adequate remedy at law.

110.    Plaintiffs and members of the Class are entitled to seek restitution and other relief from Defendant, including an order requiring Defendant to disgorge all profits, benefits, and other compensation obtained by Defendant through and for its wrongful conduct.

## COUNT VII

## NEGLIGENCE — FAILURE TO WARN

111.    Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

112.    Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and selling DevaCurl products to Plaintiffs and the Class.

113.    The use of Defendant's products in a manner that was intended or reasonably foreseeable by Defendant, involved substantial risk of hair loss, hair damage, balding, and scalp injury.

114.    The risk of substantial hair loss, hair damage, balding and scalp injury was known or knowable to Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

115.   Defendant, as the developer, manufacturer, distributor, and seller of DevaCurl products, had a duty to warn Plaintiffs and the Class of all dangers associated with the intended use of the DevaCurl products.

116.   Certainly, after receiving thousands of complaints of hair loss, hair damage, balding, and scalp injury from DevaCurl customers, a duty arose to provide a warning to consumers that use of the product involved a non-insubstantial risk of hair loss, damage, balding, and scalp injury.

117.   Defendant was negligent and breached their duty of care by negligently failing to give adequate warning to purchasers and users of DevaCurl products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the products.

118.   Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using DevaCurl products as described herein, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing Plaintiffs and the Class with adequate warnings.

119.   As a direct and proximate result of Defendant's failure to adequately warn consumers that use of DevaCurl products could cause hair loss, hair damage, balding, and scalp injury, Plaintiffs and the Class suffered damages as set forth herein.

## COUNT VIII

## NEGLIGENCE —FAILURE TO TEST

120.   Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

121.   Defendant did not perform adequate testing on DevaCurl products which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied, and sold to Plaintiffs and the Class.

COMPLAINT

122.   Adequate testing would have revealed the serious deficiencies in the DevaCurl products in that it would have revealed the substantial hair loss, hair damage, balding, and scalp irritation occasioned by use of the DevaCurl products.

123.   Defendant has, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—DevaCurl products before introducing them into the stream of commerce.

124.   Defendant breached these duties by failing to exercise the ordinary care in the design and testing of DevaCurl products, which they introduced into the stream of commerce, because Defendant knew or should have known that the DevaCurl products could cause substantial hair loss, hair damage, balding and scalp irritation.

125.   Defendant knew or reasonably should have known that Plaintiffs and Class members would suffer economic damages or injury and be at an increased risk of suffering damage and injury, as a result of its failure to exercise ordinary care in the design of DevaCurl products by failing to conduct appropriate testing.

126.   By reason of foregoing, Plaintiffs and the Class experienced and are at risk of experiencing financial damage and injury.

127.   As a direct and proximate result of Defendant's failure to test DevaCurl products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied by the Defendant, Plaintiffs and the Class have suffered damages.

**COUNT IX**

**STRICT PRODUCTS LIABILITY**

128.   Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

129.   Defendant is the creator, developer, and manufacturer of the DevaCurl products.

130.   Defendant sells the DevaCurl products through its website and through other retailers such as Target, Amazon, Ulta Beauty, Walmart, and Sephora.

131. As described herein, the DevaCurl products possessed a defect in manufacturing in that the formula can cause substantial hair loss, hair damage, balding and scalp injury.

132. The defect in the DevaCurl products existed at the time the products left Defendant's possession and were introduced into the stream of commerce.

133. The DevaCurl products caused harm and injury to Plaintiffs and the Class in that, *inter alia*, it caused and causes hair loss, hair damage, balding and scalp injury.

134. Plaintiffs' use of the DevaCurl products occurred in a manner that was reasonably foreseeable to Defendant.

**COUNT X**

**CONSUMER PROTECTION—OTHER STATES' LAW**

135. Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

136. All Plaintiffs and putative Class members assert consumer protection claims arising from the factual circumstances detailed above. All U.S. jurisdictions have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising that further allow consumers to bring private or class actions. Consumer protection is a defined area of law, similar to negligence, contract, and warranty law.

137. By the early 1980s, every state and the District of Columbia had enacted consumer protection legislation, based upon model acts promulgated by the Federal Trade Commission ("FTC") and the National Conference of Commissioners on Uniform State Laws ("Uniform State Law Commission") – originally referred to as "little" or "baby FTC acts." These remedial statutes, now generally known as "UDAP" (unfair or deceptive acts or practices) statutes, broadly prohibit unfair or deceptive acts and practices that harm consumers. They outlaw deceptive and abusive marketing and advertising misconduct and provide private, state enforcement mechanisms to supplement the limited resources of federal authorities.

COMPLAINT

138.   Virtually every UDAP law in the nation traces its origin to the FTC Act, 15 U.S.C. § 45(a)-(m), or one of two contemporaneous model consumer acts that were developed and promulgated in the 1960s and recommended for adoption in 1970 by The Council of State Governments.  All three models prohibit deceptive acts and practices aimed at consumers, including those at issue here.

**Model Form 1** reads: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

**Model Form 2** reads: "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

**Model Form 3** reads in pertinent part: "The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful:
    "(5)   representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;
    "(7)   representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; or
    "(9)   advertising goods or services with intent not to sell them as advertised[.]"

139.   **California's UCL**, a hybrid of Models 1 and 2, prohibits "unfair competition, [which] shall mean and include any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . .."  Cal. Bus. & Prof. Code § 17200.

140.   **California's CLRA** follows Model 3: "(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

"(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

"(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

"(9) Advertising goods or services with intent not to sell them as advertised."

Cal. Civ. Code § 1770.

141.    While State consumer protection laws may vary facially, their substance is strikingly similar and without material difference in this case. Not a single jurisdiction permits the misconduct and deception evidenced by Defendant's failure to provide hair care products that were free from defects as Plaintiffs and Class members reasonably expected.

142.    Because the following state law standards are common and present no true conflicts of substantive law in the context of this case's facts, and in the alternative to applying the law of a single state to all Class Members, Plaintiffs seek, pursuant to Rule 23, to represent all people similarly injured under state consumer protection laws.

143.    Plaintiffs and each of the other members of the class is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the state in which they reside or where the Defendant resides.

144.    The consumer protection laws of each state declare that unfair or deceptive acts or practices in the conduct of trade or commerce is unlawful.  Defendant has violated the consumer protection laws of all states in the same manner as described in Counts I and III.

145.    These consumer protection laws are substantively the same for purposes of defining Defendant's acts as violations thereof in this case:

COMPLAINT

**Alabama**:

Similar to California's CLRA and Model Form 3, Alabama law prohibits "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have … (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another … (27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."

Ala. Code § 8-19-5(5); (7); (27) (*cf*. Model Form 3; CLRA)

**Alaska**:

Similar to California's UCL and Model Forms 1 and 2, Alaska law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce… includ[ing], but not limited to … using or employing deceptive, fraud, false pretenses, false promise, misrepresentation, or knowingly concealing,
suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or mission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged."

Alaska Stat. §§ 45.50.471(a), (b) (*cf*. Model Forms 1 and 2; UCL)

**Arizona**:

Similar to California's UCL and Model Forms 1 and 2, Arizona law prohibits "The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]"

Ariz. Rev. Stat. Ann. § 44-1522 (*cf*. Model Forms 1 and 2; UCL)

**Arkansas**:

Similar to California's UCL and Model Form 2, Arkansas law prohibits, "When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, … The act, use, or employment by any person of any deception, fraud, or false pretense."

Ark. Code Ann. § 4-88-108 (*cf.* Model Form 2; UCL)

And similar to California's CLRA and Model Form 3, Arkansas law prohibits "(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model … (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]"

Ark. Code Ann. § 4-88-107(a)(1); (10) (*cf.* Model Form 3; CLRA)

**Colorado**:

Similar to California's CLRA and Model Form 3, Colorado law prohibits "(e) Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith … (g) Represent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another[.]"

Colo. Rev. Stat. Ann. § 6-1-105(e); (g) (*cf.* Model Form 3; CLRA)

**Connecticut**:

Similar to California's UCL and Model Form 1, Connecticut law prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Conn. Gen. State. Ann. § 42-110b (*cf.* Model Form 1; UCL)

**Delaware**:

Similar to California's UCL and Model Forms 1 and 2, Delaware law specifies that "[t]he act, use or employment by any person of any deception, fraud, false pretenses, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intention that other rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."

6 Del. Code § 2513(a) (*cf.* Model Forms 1 and 2; UCL)

**District of Columbia**:

Similar to California's CLRA and Model Form 3, District of Columbia law prohibits familiarly enumerated deceptive trade practices: "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to: (a) representing that goods or services have source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; … (d) represent that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; … (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered. . . ."

D.C. Code § 28-3904(e), (f) (*cf.* Model Form 3; CLRA)

**Florida**:

Similar to California's UCL and Model Form 1, Florida law prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of any trade or commerce[.]"

Fla. Stat. § 501.204(1) (*cf.* Model Form 1; UCL)

**Georgia**:

Similar to California's UCL and Model Form 1, Georgia law prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."

Ga. Code Ann. § 10-1-370: § 10-1-393(a)(*cf.* Model Form 1: UCL)

**Hawaii**:

Similar to California's UCL and Model Form 1, Hawaii law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Haw. Rev. Stat. §§ 480-2(a) (*cf.* Model Form 1; UCL)

**Idaho**:

Similar to California's UCL and Model Forms 1 and 2, Idaho law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce… includ[ing], but not limited to … engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer."

Idaho Code § 48-603(5), (7), (17) & (18) (*cf.* Model Forms 1 and 2; UCL)

**Illinois**:

Similar to California's UCL and Model Forms 1 and 2, Illinois law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, [or] misrepresentation[.]"

815 ILCS 505/2 (*cf.* Model Forms 1 and 2; UCL);

And similar to California's CLRA and Model form 3, Illinois law also prohibits familiarly enumerated deceptive trade practices: "(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; . . . (7) represents that goods or services are of a particular standard,

quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (9) advertises goods or services with intent not to sell them as advertised[.]"

815 Ill. Comp. Stat. 510/2 (*cf*. Model form 3; CLRA)

**Indiana**:

Similar to California's UCL and Model Form 1, Indiana law prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction.".

Ind. Code § 24-5-0.5-3(a) (*cf*. Model Form 1; UCL)

And similar to California's CLRA and Model Form 3, Indiana law also prohibits the following representations as deceptive trade practices: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have. (2) That such subject of a consumer transaction is
of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not… (7) That the supplier has a sponsorship, approval, or affiliation in such consumer transaction the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have."

Ind. Code § 24-5-0.5-3(b)(1),(b)(2), (b)(7) (*cf*. Model Form 3; CLRA)

**Iowa**:

Similar to California's UCL and Model Forms 1 and 2, Iowa law prohibits: "a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes."

Iowa Code § 714H (*cf*. Model Forms 1 and 2; UCL)

**Kansas**:

Similar to California's UCL and Model Form 2, Kansas law prohibits a supplier from engaging in "any deceptive act or practice in connection with a consumer transaction."

Kan. Stat. Ann. § 50-626(a) (*cf.* Model Form 2; UCL)

Also similar to California's CLRA and Model Form 3, Kansas defines "deceptive acts and practices" to include representations that: "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;…(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;… (F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or (G) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist." Kansas law further proscribes: "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."

Kan. Stat. Ann. § 626(b)(1)(A), (D), (F), (G), § 626(b)(2), § 626(b)(3) (*cf.* Model Form 3; CLRA)

**Kentucky**:

Similar to California's UCL and Model Forms 1 and 2, Kentucky law prohibits

"[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade
or commerce…."

Ky. Rev. Stat. § 367.170 (*cf.* Model Forms 1 and 2; UCL)

**Louisiana**:

Similar to California's UCL and Model Form 1, Louisiana law declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."

La. Stat. § 51:1405 (*cf.* Model Form 1; UCL)

**Maine**:

Similar to California's UCL and Model Form 1, Maine law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."

Me. Rev. Stat. Ann. tit.5, § 207 (*cf.* Model Form 1; UCL)

**Maryland**:

Similar to California's CLRA and Model Form 3, Maryland law prohibits the familiarly enumerated "unfair, abusive, or deceptive trade practices" to include any (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2)Representation that (i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;…(iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) Failure to state a material fact if the failure deceives or tends to deceive;… Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods, consumer realty, or consumer service;"

Md. Code Ann. Com. Law § 13-301(1), 2(i), (2)(iv), (3), (9)(i) (*cf.* Model Form 3; CLRA)

**Massachusetts**:

Similar to California's UCL and Model Form 1, Maine law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."

Mass. Gen. Laws Ann., Ch. 93A, §§ 2 (*cf.* Model Form 1; UCL)

COMPLAINT

**Michigan**:

Similar to California's UCL and Model Form 1, Michigan law prohibits "unfair, unconscionable, or deceptive methods, acts or practice in the conduct of trade or commerce[.]"

Mich. Comp. Laws Ann. §§ 445.903 (3)(1) (*cf*. Model Form 1; UCL)

**Minnesota**:

Similar to California's UCL and Model Form 2, Minnesota law prohibits "the act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice[.]"

Minn. Stat. §§ 325F.69; subd. 1 (*cf*. Model Form 2, UCL)

And similar to California's CLRA and Model form 3, Minnesota law also prohibits familiarly enumerated deceptive trade practices:  "A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . [or] (9) advertises goods or services with intent not to sell them as advertised[.]"

Minn. Stat. 325D.44, subd. 1 (*cf*. Model Form 3; CLRA)

**Mississippi**:

Similar to California's UCL and Model Form 1, Mississippi law prohibits "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce."

Miss. Code Ann. § 75-24-5(1) (*cf*. Model Form 1; UCL)

And similar to California's CLRA and Model Form 3, Mississippi law also prohibits familiarly enumerated deceptive trade practices:  (e) Representing

that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;… (g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;… (i) Advertising goods or services with intent not to sell them as advertised…"

Miss. Code Ann. § 75-24-5(2)(e), (g), (i) (*cf.* Model Form 3; CLRA)

**Missouri**:

Similar to California's UCL and Model Forms 1 and 2, Missouri law prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]"

Vernon's Ann. Mo. Stats.§ 407.020 (*cf.* Model Forms 1 and 2; UCL)

**Montana**:

Similar to California's UCL and Model Form 1, Montana law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Mont. Code. Ann. § 30-14-103 (*cf.* Model Form 1; UCL)

**Nebraska**:

Similar to California's UCL and Model Form 1, Nebraska law prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

Neb. Rev. Stat. Ann § 59-1602 (*cf.* Model Form 1; UCL)

**Nevada**:

Similar to California's CLRA and Model Form 3, Nevada law prohibits a person from engaging in the familiarly enumerated deceptive trade practices that include, "5. Knowingly mak[ing] a false representation as to the

characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith... 7. Represent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model… 9. Advertis[ing] goods or services with intent not to sell or lease them as advertised…"

Nev. Rev. Stat. §§ 598.0903 through 598.0999; Nev. Rev. Stat. § 41.600 (*cf.* Model Form 3; CLRA)

**New Hampshire**:

Similar to California's UCL and Model Form 1, New Hampshire law prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce[.]"

N.H. Rev. Stat. Ann. §§ 358-A:2 (*cf.* Model Form 1; UCL)

**New Jersey**:

Similar to California's UCL and Model Form 2, New Jersey law prohibits "the act,
use or employment by any person of unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation… in connection with the sale or advertisement of any merchandise[.]"

N.J. Stat. Ann. § 56:8-2 (*cf.* Model Form 2; UCL)

**New Mexico**:

Similar to California's UCL and Model Form 1, New Mexico law prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."

N.M. Stat. Ann. § 57-12-3 (*cf.* Model Form 1; UCL)

And similar to California's CLRA and Model Form 3, New Mexico defines these practices as: "…(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or

quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have;… (7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another; (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive…"

N.M. Stat. Ann. § 57-12-2(D)(5), (7), (14) (*cf.* Model Form 3; CLRA)

**New York**:

Similar to California's UCL and Model Forms 1 and 2, New York law prohibits "deceptive acts or practices in the conduct of any business, trade or commerce[.]"

N.Y. Gen. Bus. Law § 349(a) (*cf.* Model Forms 1 and 2)

**North Carolina**:

Similar to California's UCL and Model From 1, North Carolina law prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

N.C. Gen. Stat. §§ 75-1 *et seq.* (*cf.* Model Form 1; UCL)

**North Dakota**:

Similar to California's UCL and Model Form 2, North Dakota law prohibits "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation[.]"

N.D.C.C. §51-15-02 (*cf.* Model Form 2; UCL)

**Ohio**:

Similar to California's CLRA and Model form 3, Ohio law also prohibits familiarly enumerated deceptive trade practices: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. . . . [T]he act or practice of a supplier in representing any of the following is deceptive:  (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or

benefits that it does not have; [or] (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not[.]"

Ohio Rev. Code § 1345.02 (*cf.* Model Form 3; CLRA)

**Oklahoma**:

Similar to California's CLRA and Model Form 3, Oklahoma law prohibits a person from engaging in the following familiarly enumerated deceptive trade practices: "…(2) Mak[ing] a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction; (3) Making a false or misleading representation, knowingly or with reason to know, as to affiliation, connection, association with, or certification by another;… Mak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;…"

Okla. Stat. Ann. tit. 15, § 753(2), (3), (5), tit. 78, § 53 (*cf.* Model Form 3; CLRA)

Also, as with California's UCL and Model Form 1, it is a violation of Oklahoma law to "[c]omit[] an unfair or deceptive trade practice."

Okla. Stat. Ann. tit. 15 § 752(20). (*cf.* Model Form 1; UCL)

**Oregon**:

Similar to California's CLRA and Model Form 3, Oregon law prohibits a person from engaging in the following familiarly enumerated deceptive trade practices: "…(e) Represent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have…. (g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another…. (t) Concurrent with tender or delivery of any real

estate, goods or services fails to disclose any known material defect or material nonconformity.

Or. Rev. Stat. § 646.608(1)(e), (g), (t); § 646.608(2) (*cf.* Model Form 3; CLRA)

Also, as with California's UCL and Model Form 1, it is a violation of Oregon law when a person "[e]ngages in any other unfair or deceptive conduct in trade or commerce[.]"

Or. Rev. Stat. § 646.608(1)(u). (*cf.* Model Form 1; UCL)

**Pennsylvania**:

Similar to California's UCL and to Model Form 1, Pennsylvania law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

73 Pa. Stat. Ann. § 201-3 (*cf.* UCL; Model Form 1).

And similar to California's CLRA and Model Form 3, Pennsylvania defines these practices as "(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services…(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;… (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;... (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

73 Pa. Stat. Ann. § 201-2(4)(ii); (v); (vii); (xxi) (*cf.* Model Form 3; CLRA)

**Rhode Island**:

Similar to California's UCL and to Model Form 1, Rhode Island law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

R.I. Gen. Laws Ann. § 6-13.1-2.

COMPLAINT

And similar to California's CLRA, Rhode Island adopts Model Form 3 to define these practices as "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; . . . (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . [or] (ix) Advertising goods or services with intent not to sell them as advertised.

R.I. Gen. Laws § 6-13.1-1 (*cf.* Model Form 3; CLRA)

**South Carolina**:

Similar to California's UCL and to Model Form 1, South Carolina prohibits: "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

S.C. Code § 39-5-20(a) (*cf.* UCL; Model Form 1)

**South Dakota**:

Similar to California's UCL and to Model Form 2, South Dakota declares it "a deceptive act or practice for any person to: (1) Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or
to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby…"

S. D. Codified Laws § 37-24-6(1) (*cf.* UCL; Model Form 2)

**Tennessee:**

Similar to California's UCL and to Model Form 1, Tennessee law declares unlawful "unfair or deceptive acts or practices affecting the conduct of any trade or commerce."

Tenn. Code §§ 47-18-104(a) (*cf.* UCL; Model Form 1).

Also similar to California's CLRA and Model Form 3,Tennessee law defines such conduct as: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;… (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;… ;… (9) Advertising goods or services with intent not to sell them as advertised… (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services;… (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division."

Tenn. Code §§ 47-18-104(b)(5), (b)(7), (b)(9), (b)(21), (b)(27) (*cf.* Model Form 3; CLRA)

**Texas**:

Similar to California's CLRA and Model Form 3, Texas law declares unlawful the following "false, misleading, or deceptive acts or practices[:]… (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;… (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not… (7) representing that goods or services are
of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;… (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

COMPLAINT

Tex. Bus. & Com. Code §17.46(b)(2), (b)(3), (b)(5), (b)(7), (b)(24) (*cf.* Model Form 3; CLRA)

**Utah**:

Similar to California's CLRA and Model Form 3, Utah law prohibits "a deceptive act or practice by a supplier in connection with a consumer transaction" which includes where a supplier: "(a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;... (e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not;... (i) indicates that the supplier has a sponsorship, approval, or affiliation the supplier does not have..."

Utah Code §13-11-4(1), (4)(2)(a), (4)(2)(b), (4)(2)(e), (4)(2)(i) (*cf.* Model Form 3; CLRA)

**Vermont**:

Similar to California's UCL and Model Form 1, Vermont law prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce [.]"

Vt. Stat. Ann. tit. 9, § 2453 (*cf.* Model Form 1; UCL)

**Virginia**:

Similar to California's UCL and Model Form 2, Virginia law prohibits "any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading, or uses any other method, device or practice which is fraudulent, deceptive or misleading to induce the public to enter into any obligation."

Va. Code §59.1-683 (*cf.* Model Form 2; UCL)

Similar to California's CLRA and Model Form 3, Virginia law also prohibits familiarly enumerated deceptive trade practices: "A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful: 5. Misrepresenting that

goods or services have certain quantities, characteristics, ingredients, uses, or benefits; 6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; [or] 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised[.]"

Va. Code §59.1-200 (*cf.* Model Form 3; CLRA)

**Washington**:

Similar to California's UCL and Model Form 1, Washington law prohibits "[u] nfair methods of competition and unfair or deceptive acts or practices in the conduct of any
trade or commerce [.]"

Wash. Rev. Code § 19.86.020 (*cf.* Model Form 1; UCL)

**West Virginia**:

Similar to California's UCL and Model Form 1, West Virginia law also prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

W.Va. Code § 46A-6-104 (*cf.* Model Form 1; UCL)

And similar to California's CLRA and Model Form 3, West Virginia defines "unfair methods of competition and unfair or deceptive acts or practices" as "(E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; . . . (G) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another; . . . [or] (I) Advertising goods or services with intent not to sell them as advertised[.]" *Id.* at § 46A-6-102(7).

W.Va. Code § 46A-6-102(7) (*cf.* Model Form 3; CLRA)

**Wisconsin**:

Similar to California's UCL and Model Form 2, Wisconsin prohibits representations or statements of fact "which is untrue, deceptive, or misleading."

Wisc. Stat. § 100.18(1) (*cf.* Model Form 2; UCL)

**Wyoming**:

Similar to California's UCL and Model Form 1, Wyoming law prohibits an individual from "(xv) Engag[ing] in unfair or deceptive acts or practices."

Wyo. Stat. § 40-12-105(a)(xv). (*cf.* Model Form 1; UCL)

And similar to California's CLRA and Model Form 3, Wyoming law enumerates certain deceptive trade practices to include when a person knowingly: "(i) Represents that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have; (ii) Represents that he has a sponsorship, approval or affiliation he does not have; (iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not."

Wyo. Stat. § 40-12-105(a)(i), (ii), (iii) (*cf.* Model Form 3; CLRA).

146.    The unfair and deceptive business practices set forth above have and continue to injure class members and the general public and cause the loss of money. These violations have unjustly enriched Defendant at the expense of class members. As a result, class members are entitled to monetary relief and any equitable relief the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all other similarly situated individuals, demand judgment against Defendant as follows:

A.    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and 23(b)(1), or Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.    Appointment of Plaintiffs as class representatives and the undersigned as class counsel on behalf of the Class sought in this complaint;

C. Awarding Plaintiffs and members of the Class monetary damages including compensatory relief, punitive damages, and actual damages in an amount to be determined at trial;

D. Appropriate preliminary and permanent injunctive and declaratory relief;

E. Statutory damages and penalties as provided by law;

F. Prejudgment continuing through the date of entry of judgment in this action;

G. Costs and fees incurred in connection with this action, including attorneys' fees, expert witness fees, and other costs, as provided by law; and

H. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

ZIMMERMAN REED, LLP

Date: March 2, 2020          By:    /s/ Christopher P. Ridout
Christopher P. Ridout
Caleb Marker
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

ZIMMERMAN REED LLP
J. Gordon Rudd, Jr. (*pro hac vice* anticipated)
David M. Cialkowski (*pro hac vice* anticipated)
Alia M. Abdi (*pro hac vice* anticipated)
80 S 8th Street, Suite 1100
Minneapolis, MN 55402
(612) 341-0400 Telephone
(612) 341-0844 Facsimile

COMPLAINT

1

*Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT